IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

GEORGE SAMUEL SLATTON                                                                PLAINTIFF

v.                              NO. 3:15-cv-00329 PSH

CAROLYN W. COLVIN, Acting Commissioner                                      DEFENDANT
of the Social Security Administration

### MEMORANDUM OPINION AND ORDER

Plaintiff George Samuel Slatton ("Slatton") began this case by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Slatton maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole because the ALJ committed error at step three of the sequential evaluation process.[1] Slatton so maintains for two reasons. First, Slatton maintains that the ALJ made no specific finding regarding whether Slatton is disabled under Listing 12.05C. Second, given the evidence in the record, Slatton maintains that he meets Listing 12.05C, and the ALJ erred when he failed to so find.

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

At step three, the ALJ must determine whether a claimant's impairment, when considered individually and in combination with his other impairments, meets or equals a listed impairment. See Raney v. Barnhart, 396 F.3d 1007 (8th Cir. 2005). The determination is a medical one, see Cockerham v. Sullivan, 895 F.2d 492 (8th Cir. 1990), and the claimant bears the burden of showing that his impairment meets or equals a listed impairment, see Pyland v. Apfel, 149 F.3d 873 (8th Cir. 1998).

Listing 12.05 addresses intellectual disability, formerly referred to as mental retardation. The introductory paragraph of Listing 12.05 explains that the disability encompasses "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," that is, the evidence demonstrates or supports onset of the impairment before the claimant's twenty-second birthday. A claimant meets or equals Listing 12.05 by satisfying the requirements of the introductory paragraph and one of four paragraphs contained in the listing. Paragraph C, or 12.05C, requires proof of a valid verbal, performance, or full scale IQ of sixty through seventy and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The formal diagnosis of an intellectual disability is not required. The ALJ is not obligated, though, to accept a claimant's IQ scores and may reject scores that are inconsistent with the record. See Clark v. Apfel, 141 F.3d 1253 (8th Cir. 1998). "Indeed test results of this sort should be examined to assure consistency with daily activities and behavior." See Id. at 1255 [internal quotations and citation omitted].

The evidence relevant to Slatton's intellectual disability reflects that in May of 2012, he presented to Mid-South Health Systems ("Mid-South") seeking treatment for depressive symptoms. See Transcript at 305-311.[2] He reported difficulty learning, although he acknowledged having completed the eleventh grade in school, and reported a history of drug abuse. He was estimated to have borderline intellectual functioning and was diagnosed with a major depressive disorder, recurrent, with severe psychotic features; a generalized anxiety disorder; agoraphobia with a panic disorder; and non-dependent alcohol and cannabis abuse. He was assigned a Global Assessment of Functioning ("GAF") score of fifty. It was recommended that he attend bi-weekly therapy sessions to improve his basis social skills and begin medication management.

Slatton returned to Mid-South in June of 2012 for a psychiatric evaluation. See Transcript at 312-313. His chief complaints were anxiety, depression, and agoraphobia. He reported difficulty in school, noting that he had been held back in the second grade, and reported significant drug use. Dr. Mary Wegner, M.D., ("Wegner") examined Slatton and offered the following observations:

> … [Slatton] is able to give an adequately detailed history in a fairly goal-directed manner. There were no over delusions expressed. Although, he has probably nonspecific auditory hallucinations. His mood is dysphoric. He denies any suicidal ideation. His intellectual functioning is probably in the low average range.

---

[2] Slatton appears to have presented to Mid-South on an earlier occasion. See Transcript at 314-316. He presented at that time complaining of homicidal ideation. He reported that he had been assaulted as a minor, and the perpetrator had recently moved nearby. Slatton was afraid he might hurt the perpetrator.

See Transcript at 313. Wegner noted that Slatton's ongoing substance abuse was problematic, and Slatton symptoms were "pretty severe." See Transcript at 313. Wegner prescribed medication and recommended continued therapy.

Slatton returned to Mid-South on what appears to have been six occasions for therapy. See Transcript at 321 (06/28/2012), 320 (07/05/2012), 319 (07/09/2012), 318 (07/18/2012), 317 (07/23/2012), 367-371 (09/10/2012). The progress notes reflect that his condition largely improved, although the improvement was at times slight.

In September of 2012, Slatton was seen by Dr. Dennis Vowell, Psy.D., ("Vowell") for a mental evaluation and intellectual assessment. See Transcript at 353-358. Slatton described his mood as depressed and anxious and reported feelings of hopelessness and helplessness. He reported frequent crying spells and difficulty leaving home. He denied any substance abuse issue. He reported struggling in school, and it was not clear whether he was ever enrolled in special classes. He reported being unemployed for some time and reported an inability to work because "[he cannot] stand to be around people sometimes." See Transcript at 354. Vowell administered Wechsler Adult Intelligence Scale-Fourth Edition ("WAIS-IV") testing, and Slatton's scores included the following: a full scale IQ score of sixty-five, a verbal comprehension index score of sixty-one, a perceptual reasoning index score of seventy-nine, a working memory index score of sixty-nine, and a processing speed score of seventy-one. Although Vowell considered the results valid and reliable, he opined that the scores were inconsistent with a diagnosis of mental retardation. Specifically, he observed the following:

> Current intellectual assessment indicates [Slatton's] WAIS-IV Full Scale IQ falls within the mild range of mental retardation. However, educational history and impairments in adaptive functioning indicate [his] current level of intellectual functioning most likely falls within the lower limits of the Borderline Range.

See Transcript at 356. Vowell diagnosed Slatton with a major depressive disorder, recurrent, with the most recent episode being moderate; and borderline intellectual functioning. Vowell assigned Slatton a GAF score of between fifty-two and sixty-two. With respect to the effects of Slatton's intellectual disability on his adaptive functioning, Vowell found the following:

> A. How do mental impairments interfere with this person's day to day [a]daptive functioning? …
>
> [Slatton] seldom drives. He seldom goes shopping alone. He is likely capable of managing his own finances. He is able to complete basic [activities of daily living] and basic household chores.
>
> B. Capacity to communicate and interact in a socially adequate manner? …
>
> [Slatton] appeared capable of adequate and socially appropriate communication and interaction in today's session.
>
> C. Capacity to cope with the typical mental/cognitive demands of basic work-like tasks?
>
> [Slatton] appeared to sustain a reasonable degree of cognitive efficiency and was able to track and respond to various kinds of questions and tasks without remarkable slowing or distractibility. However, in situations of mild to moderate stress it is likely he would have difficulty coping efficiently.
>
> D. Ability to attend and sustain concentration on basic tasks?
> As noted in the findings of the mental status exam, [Slatton] generally

>    displayed mild to moderate impairments in his ability to respond to basic assessment of attention and concentration capacity. This was consistent with the broader capacity to attend reasonably well to the demands of the overall evaluation.
>
>    E. Capacity to sustain persistent in completing tasks?
>
>    Persistence appeared adequate throughout the session.
>
>    F. Capacity to complete work-like tasks within an acceptable time frame?
>
>    [Slatton] did not display remarkable psychomotor slowing. In terms of mental status type tasks, capacity to perform within a basically acceptable time frame was demonstrated.

See Transcript at 357.

Dr. Dan Donahue, Ph.D., ("Donahue") reviewed Slatton's medical records in October of 2012. See Transcript at 48-58. Donahue opined that Slatton is capable of performing simple, routine, repetitive tasks, specifically noting the following: "[Slatton] is able to perform work where interpersonal contact is incidental to work performed, e.g., assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct, and concrete (unskilled)." See Transcript at 56.

In December of 2012, Dr. Brad Williams, Ph.D., ("Williams") reviewed Slatton's medical records. See Transcript at 61-72. Williams' findings mirror the findings made by Donahue, specifically, Williams opined that Slatton can perform "unskilled work at any exertional level." See Transcript at 71.

Slatton or his representative completed several disability forms in connection with Slatton's claim for supplemental security income payments. Those forms indicate the highest grade of school Slatton completed was the twelfth grade, although he was enrolled in special education classes. A typical day consists of working in his yard, doing laundry, watching television, and occasionally working in a garden. He does not spend time with others, does not like to go anywhere, and is "scared of everything." See Transcript at 221. Slatton has difficulty with memory, concentration, completing tasks, understanding, following instructions, and dealing with stress or changes. His home is very closed, noting that he keeps "tin foil over all the windows." See Transcript at 236. He takes, or has taken, prescription medication.

Slatton testified during the administrative hearing about his intellectual disability. See Transcript at 30-42. He stated he completed the ninth grade in school, although he was in special education classes. He can read and write "to a degree" and can "barely" add and subtract. See Transcript at 31. He has not worked since approximately 1988 and is unable to do so for the following reasons: "I'm scared of people. I have panic attacks. I just, I just can't stand to be around people. I think they're going to hurt me." See Transcript at 33. His medication helps control his symptoms but causes him to ache and lose sleep. Slatton lives alone, and his mother helps him pay his bills. He is assisted in completing his activities of daily living by a neighbor and a cousin. He has hallucinations, panic attacks, and hears "all kinds of stuff." See Transcript at 40. He has a history of drug and alcohol abuse but has been clean for approximately one month.

The ALJ found at step two that Slatton has severe impairments in the form of a "major depressive disorder with psychotic features, [a] general anxiety disorder, borderline intellectual functioning, agoraphobia with [a] panic disorder, and hearing loss in [his] right ear. <u>See</u> Transcript at 12. At step three, the ALJ found that Slatton's impairments do not meet or equal Listings 12.02, 12.04, or 12.06. The ALJ did not consider whether Slatton's impairments meet or equal Listing 12.05, specifically, Listing 12.05C. The ALJ then assessed Slatton's residual functional capacity and found that he is capable of performing a full range of work at all exertional levels but with the following non-exertional limitations:

> … [Slatton] can perform work in which interpersonal contact is incidental to the work to be performed. [He] can perform tasks with a complexity of one or two step tasks that are learned and performed by rote with few variable (sic) and little judgment. Supervision required of the claimant would be simple, direct, and concrete. [He] could perform SVP one or two jobs that could be learned within thirty days. Furthermore, [his] work should not exceed reasoning levels of one or two. [His] work should not require contact with the general public and must not require excellent bilateral hearing.

<u>See</u> Transcript at 15. In making the foregoing findings, the ALJ gave significant weight to the opinions offered by Vowell, Donahue, and Williams. The ALJ found at step four that Slatton has no past relevant work, but the ALJ found at step five that Slatton can perform other work, <u>i.e</u>., work as a kitchen helper and a food preparation worker. On the basis of those findings, the ALJ concluded that Slatton was not disabled for purposes of the Social Security Act at any time since he filed the application at bar.

The ALJ committed error at step three when he failed to consider whether Slatton's intellectual disability meets or equals Listing 12.05C. The record contains some medical evidence that Slatton has such a disability, e.g., the results of the WAIS-IV testing performed by Vowell, and the ALJ should have considered whether the disability meets or equals Listing 12.05C. The ALJ's error does not warrant a remand, though, because the medical evidence does not establish that Slatton's disability meets or equals Listing 12.05C. See Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853 (8th Cir. 2003) (failure to consider listing not reversible error if record supports overall conclusion). The Court so finds for two reasons.

First, assuming without deciding that Slatton's intellectual disability manifested prior to his twenty-second birthday and he has an additional and significant impairment, the results of the WAIS-IV testing were appropriately questioned by Vowell. He was of the opinion that given Slatton's education and adaptive functioning, the results were not a true indication of Slatton's intellectual abilities.[3] Vowell believed Slatton's level of intellectual functioning to be in the borderline range. Wegner held a similar opinion as she observed that Slatton is probably performing in the "low average range." See Transcript at 313.[4]

---

[3] The ALJ found that Slatton has "at least a high school education …" See Transcript at 19. Although Slatton has some high school education, the extent of his education is not clear. See Transcript at 30-31 (completed the ninth grade), 305 (completed the eleventh grade), 199 (completed the twelfth grade).

[4] The Court recognizes that a formal diagnosis of mental retardation is not required in order to meet or equal Listing 12.05C. See Maresh v. Barnhart, 438 F.3d 897 (8th Cir. 2006).

Second, the results of the WAIS-IV testing are inconsistent with the adaptive functioning findings made by Vowell, Donahue, and Williams.[5] For instance, Vowell opined that although Slatton has difficulty coping with mild to moderate stress, he could perform mental status type tasks within an acceptable timeframe. Donahue opined that although Slatton was moderately limited in his ability to understand, remember, and carry out detailed instructions and maintain attention and concentration for extended periods, he was otherwise not significantly limited.

Although the ALJ failed to consider whether Slatton's intellectual disability meets or equals Listing 12.05C, the ALJ nevertheless incorporated the limitations caused by an intellectual disability into the assessment of Slatton's residual functional capacity.[6] Specifically, the ALJ found that Slatton's residual functional capacity is such that he can perform a full range of work at all exertional levels but with the several non-exertional limitations. The ALJ's findings take into account the effects of Slatton's intellectual disability, and the ALJ's findings are supported by substantial evidence on the record as a whole. Vowell, Donahue, and Williams opined that Slatton is capable of the demands of such work, and their opinions are not inconsistent with those offered by Wegner.

---

[5] Because Donahue and Williams only reviewed Slatton's medical records, their opinions are not entitled to great weight. Their opinions are, though, entitled to some weight. See Mabry v. Colvin, 2016 WL 827183 (8th Cir. March 3, 2016).

[6] The assessment of a claimant's residual functional capacity is a determination of the most he can do despite his limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010).

Given the foregoing, the medical evidence does not support the proposition that Slatton has a <u>valid</u> verbal, performance, or full scale IQ of sixty through seventy. It therefore cannot be said that his intellectual disability meets or equals Listing 12.05C.[7] Moreover, the ALJ properly incorporated the limitations caused by an intellectual disability into the assessment of Slatton's residual functional capacity.

On the basis of the foregoing, the Court finds that there is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Slatton's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 29th day of April, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] Slatton maintains that the case at bar is remarkably similar to <u>Scott ex rel. Scott v. Astrue</u>, 529 F.3d 818 (8th Cir. 2008). In that case, the Court of Appeals reversed and remanded an ALJ's decision because "the ALJ's analysis was insufficient to permit adequate judicial review." <u>See Id</u>. at 822. The Court of Appeals so found because the ALJ failed to support his finding that the claimant's impairment did not meet or equal a listed impairment and because the record contained numerous inconsistencies. The case at bar is distinguishable from <u>Scott ex rel. Scott v. Astrue</u> because there is substantial evidence on the record as a whole to support the finding that Slatton's intellectual disability does not meet or equal Listing 12.05C.